IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **RICHARD POWELL,** | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Civil Action No. 4:20-cv-591-ALM-KPJ |
| | § |
| **KILOLO KIJAKAZI,**[1] | § |
| *Acting Commissioner of Social Security*, | § |
| | § |
| Defendant. | § |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Richard Powell ("Mr. Powell") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for disability insurance benefits. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **AFFIRMED**.

### I.   APPLICABLE LAW

#### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

1

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

B. **Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1022). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.  BACKGROUND AND PROCEDURAL HISTORY

Mr. Powell was born in 1984, completed high school and three years of college, and worked as an aircraft mechanic.[4] *See* Tr. 20, 30, 126. On December 12, 2018, Mr. Powell filed an application for Disability Insurance Benefits ("DIB"), alleging disability since June 21, 2017, due to "[p]olycythemia, PTSD, right knee pain[ ], internal hemorrhoids, right knee chondromalacia patella and quadriceps tendons, tinnitus, migraine headaches, obstructive sleep apnea, celiac disease (also claimed as chest spams), [and] gastroesophageal reflux disease [("GERD")], gastropares." *See* Tr. 126–27. The Social Security Administration ("SSA") denied Mr. Powell's claim initially on March 21, 2019, and upon reconsideration on September 4, 2019. *See* Tr. 160–63, 169–71. Thereafter, Mr. Powell filed a written request for a hearing. *See* Tr. 172–73. On December 16, 2019, Administrative Law Judge Mark J. Mendola (the "ALJ") held a hearing. *See* Tr. 74–102. The hearing was attended by Mr. Powell, his attorney, and a vocational expert ("VE"). *See* Tr. 74.

On February 26, 2020, the ALJ issued an unfavorable decision denying Mr. Powell's claim. *See* Tr. 7–32. In his decision, the ALJ found that Mr. Powell met the insured status requirements of the Social Security Act (the "Act") through December 31, 2020. *See* Tr. 12. At step one, the ALJ found that Mr. Powell had not engaged in substantial, gainful activity since June 21, 2017, his alleged onset date.[5] *Id.* At step two, the ALJ found that Mr. Powell had the following severe impairments: celiac disease; irritable bowel syndrome ("IBS"); degenerative joint disease of the bilateral knees and sacroiliac joint; degenerative disc disease of the lumbar spine; obstructive sleep

---

[4] Documents 7-1 through 7-28 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] Mr. Powell worked after his alleged disability onset date, but the ALJ found this post-onset work activity was "an unsuccessful work attempt and [did] not constitute substantial gainful activity." *See* Tr. 13.

apnea; post-traumatic stress disorder ("PTSD"); anxiety disorder; major depressive disorder; and obesity. *See* Tr. 13. The ALJ determined that Mr. Powell's medically determinable impairments of polycythemia, as well as deficiencies in vitamin D, folate, and B12, were non-severe impairments. *See* Tr. 18. The ALJ further determined that Mr. Powell's alleged impairments of tinnitus, hemorrhoids, GERD, and headaches did not rise to the level of medically determinable impairments. *See* Tr. 18–19. At step three, the ALJ found that none of Mr. Powell's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 19–22. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Powell's RFC. *See* Tr. 22–30. The ALJ found Mr. Powell had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for about 6 hours in an 8-hour workday. He can sit for about 6 hours in an 8-hour workday. He can frequently climb ladders, ropes, scaffolds, ramps, and stairs. He can frequently kneel, crouch, and crawl. He can understand, remember, and carry out detailed but not complex tasks. He can have occasional interaction with the general public. He can work in proximity with co-workers and supervisors, but should perform teamwork or tandem tasks only occasionally. He can adapt to changes in a routine work environment with no crisis management.

*See* Tr. 22. At step four, the ALJ found that Mr. Powell was unable to perform his past relevant work as an aircraft mechanic. *See* Tr. 30. At step five, the ALJ determined that considering Mr. Powell's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy he could perform. *See* Tr. 30–31. Relying on the VE's testimony, the ALJ determined that Mr. Powell could perform occupations such as cleaner, assembler, and laundry folder. *See* Tr. 31. Accordingly, the ALJ concluded Mr. Powell was not disabled within the meaning of the Act. *Id.*

Mr. Powell subsequently requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 1, 222–24. On June 10, 2020, the Appeals Council denied the request for review.

*See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Mr. Powell timely filed his appeal to this Court on August 4, 2020.[6] *See* Dkt. 1.

### III. ANALYSIS

Mr. Powell raises the following arguments on appeal: (1) the ALJ improperly failed to address Mr. Powell's treating psychiatrist, Dr. Emad Khan, M.D.'s opinion regarding the "waxing and waning nature of his mental health and IBS"; (2) the ALJ failed to consider whether Mr. Powell was capable of maintaining employment under *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003); and (3) the ALJ's decision did not consider Mr. Powell's "GI issues, disabled veterans leave, assisted 'reentry into the workforce', and anticipated absences [from work]." *See* Dkt. 10 at 10. Mr. Powell's briefing raises the foregoing issues in a single page with little to no analysis of each issue. In response, the Commissioner argues that the ALJ adequately considered the medical evidence, including the medical opinions of record, and properly formulated Mr. Powell's RFC. *See* Dkt. 12. For the reasons set forth below, the Court finds that Mr. Powell's arguments lack merit and the ALJ's decision should be affirmed.

**A. Dr. Khan's Opinion**

Mr. Powell initially argues that the ALJ improperly failed to consider the "waxing and waning nature of his mental health and IBS." *See* Dkt. 10 at 10. Mr. Powell contends this was a finding his treating psychiatrist, Dr. Khan, rendered in his December 11, 2019 mental medical source statement. *See id.* (citing Dr. Khan's opinion). Upon review of Dr. Khan's opinion, however, the Court disagrees that Dr. Khan rendered such an opinion. *See* Tr. 1523–28. Although Dr. Khan stated that Mr. Powell's anxiety exacerbated his IBS symptoms, *see* Tr. 1526, he did not

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 3.

opine that Mr. Powell's mental conditions *themselves* were waxing and waning in nature. Moreover, even if Dr. Khan's statement regarding anxiety and IBS could be construed as a waxing and waning finding, the ALJ found Dr. Khan's opinion to be unpersuasive. In his brief, Mr. Powell does not contend that the ALJ erred in his assessment of Dr. Khan's opinion under the applicable regulations. Even assuming Mr. Powell made such an argument, the Court perceives no legal error in the ALJ's analysis of the opinion.

Because Mr. Powell filed his claim after March 27, 2017, the significantly revised regulations pertaining to medical opinion evidence apply to this case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017). For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."). Pursuant to the new regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The new regulation sets forth five factors the SSA will consider in evaluating medical opinions: supportability, consistency, relationship with the claimant, specialization, and other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *See* 20 C.F.R. § 404.1520c(c). The new SSA regulations impose three "articulation requirements" when an ALJ considers medical opinion evidence. *See* 20 C.F.R. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he or she considered each individual medical opinion; rather, the ALJ "will articulate how

[he or she] considered the medical opinions . . . from that medical source together in a single analysis." 20 C.F.R. § 404.1520c(b)(1). Second, while an ALJ must consider the factors when evaluating medical opinion evidence, *see* 20 C.F.R. § 404.1520c(c)(1)–(5), the ALJ is generally only required to articulate his or her consideration of two of those factors: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions." 20 C.F.R. § 404.1520c(b)(3).

Here, the ALJ's decision reflects that he thoroughly reviewed Dr. Khan's treatment notes. *See* Tr. 16–18, 25–26 (reviewing Dr. Khan's 2018 and 2019 treatment notes). After reviewing the treatment notes and noting Dr. Khan's treating relationship with Mr. Powell, the ALJ analyzed the persuasiveness of Dr. Khan's opinion as follows:

> In December 2019, Dr. Khan filled out a medical source statement on the claimant's behalf. He opined the claimant had no useful ability to complete a normal workday or deal with normal work stress. He opined that the claimant was unable to meet competitive standards is several other mental abilities needed to perform unskilled work as well as semi-skilled and skilled work. He opined that the claimant was seriously limited in his ability to understand, remember, and carry out very short and simple instructions or make simple work-related decisions.
>
> I find this opinion unpersuasive. While this opinion is supported by Dr. Khan's mental status findings that month, it is not supported by his own longitudinal treatment notes. For instance, this was the only mental status examination where Dr. Khan noted any deficits is his grooming and/or hygiene as well as where he observed the claimant was tearful and very anxious. It appears that there was only one other instance where Dr. Khan observed any deficits in the claimant's concentration, which was over a year prior, and one other instance where he observed the claimant was sad. Otherwise, his mental status findings at that December follow up visit were rather mild. He observed the claimant was pleasant. His recent and remote memory were noted to be good. He was alert and oriented. He maintained good eye contact. No evidence of psychomotor disturbances, abnormal movements, or apraxia was noted. His speech was spontaneous with normal rate and volume. His language was fluent. His thought process was goal directed. His thought content was negative for self-directed violence, aggression, homicidal or suicidal thoughts, and delusions or obsessions. No perceptual disturbances were observed. His mood was observed to be depressed with a

8

>congruent affect. His judgment and insight were both assessed as fair. The opinion is also not consistent with the practitioner[']s recommendation that same month as well as at his previous follow up visit to simply continue his medication regimen[.]

*See* Tr. 29 (internal citations omitted). In addition, the ALJ noted that Mr. Powell's longitudinal mental health records showed that he regularly followed up with Dr. Khan for treatment, that Mr. Powell reported during several visits that his medication regimen was helping with his symptomology, and that as a result, Dr. Khan on multiple occasions simply continued the same medication regimen. *See* Tr. 25–26. Upon review, the Court finds that the ALJ properly assessed Dr. Khan's mental medical source statement under several factors, including supportability, consistency, and the treating relationship.[7] Accordingly, Mr. Powell has not presented a basis for remand on this issue.

### B. Ability to Maintain Employment

Related to his first argument above, Mr. Powell next contends that the ALJ failed to consider whether he was capable of maintaining employment on a sustained basis. The Fifth Circuit has held that an ALJ errs if he or she fails to determine whether a claimant is capable of not only obtaining, but also maintaining, employment. *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002). However, in *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), the Fifth Circuit explained that separate consideration of a claimant's ability to maintain employment is needed only in cases in which the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Id.* at 619. In the absence of such a situation, the claimant's ability to maintain employment will generally be subsumed in the RFC finding, and no separate finding as to the

---

[7] The Court also notes that the ALJ set forth other reasons supporting the mental limitations he assessed in the RFC, none of which are challenged by Mr. Powell on appeal. The ALJ's reasons included: (1) Mr. Powell failed several times to follow-up on recommendations made by his mental health providers, thereby suggesting "his symptoms may not have been as serious as has been alleged," *see* Tr. 26; (2) Mr. Powell's hearing testimony was "out of proportion and inconsistent with" the treatment notes, objective evidence, and his initial function report, *see* Tr. 26–27; and (3) Mr. Powell "described daily activities, which [were] not limited to the extent one would expect," *see* Tr. 27.

ability to maintain employment is required. *Id.* at 619–20. Further, evidence that a claimant might have "good days" and "bad days" does not, by itself, require an explicit finding regarding the claimant's ability to maintain employment. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).

Here, besides citing to Dr. Khan's medical source statement, Mr. Powell does not point to any objective evidence showing that any of his impairments waxed and waned in their manifestation of disabling symptoms. *Frank*, 326 F.3d at 619. Mr. Powell's conclusory assertion that his impairments were waxing and waning in nature is plainly insufficient. Notwithstanding Mr. Powell's failure to meet his burden of proof that his ability to maintain employment was compromised, the Court observes that the ALJ explicitly considered and rejected consultative examiner Dr. Randall Rattan, Ph.D.'s opinion that Mr. Powell would encounter difficulties maintaining work on a consistent basis from a mental health standpoint. *See* Tr. 28–29. The ALJ specifically found Dr. Rattan's opinion on maintaining employment unpersuasive in light of: (1) Dr. Rattan's "own mental status findings, . . . [where] no abnormalities were observed in [Mr. Powell's] behavior, thoughts, perceptions, or memory," (2) the opinion's lack of consistency with the "longitudinal mental status findings from [Mr. Powell's] treatment providers that observed fewer deficits than those implied by [Dr. Rattan's] overall opinion," and (3) Mr. Powell's "conservative medication management and limited individual therapy." *See* Tr. 29. Significantly, Dr. Rattan found Mr. Powell's mental symptoms to be in "mild to modest remission due to his effective treatment modalities" by mid-2019. *See* Tr. 26. Accordingly, the Court agrees with the Commissioner that the ALJ subsumed Mr. Powell's ability to maintain employment on a sustained based within the RFC determination. *See, e.g.*, *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (providing that absent evidence to the contrary, the ability to perform work on a regular and

continuing basis is inherent in the definition of RFC, and a specific finding that the claimant can maintain employment is not necessary).

### C. Consideration of Mr. Powell's GI Issues, Disabled Veterans Leave, Assisted Reentry into the Workforce, and Anticipated Absences

Finally, Mr. Powell argues that the ALJ overlooked certain issues. First, he claims the ALJ failed to consider his "GI issues." *See* Dkt. 10 at 10. Mr. Powell, however, fails to specify to which "GI issues" he is referring. Nor does he point to any evidence of "GI issues" in the administrative record that the ALJ allegedly did not consider. The Court observes that the ALJ did, in fact, consider Mr. Powell's medical records regarding various abdominal issues. *See, e.g.*, Tr. 14 (stating that Mr. Powell was diagnosed with and began receiving treatment for IBS in 2012); Tr. 15 (April 2018 visit showing normal abdominal exam despite complaints of "ongoing bloating and abdominal cramping as well as diarrhea and constipation"); Tr. 16 (August 2018 visit to VA triage clinic with complaints of abdominal burning and bloating); *id.* (October 2018 visit due to "stomach cramps and diarrhea" where provider made normal physical examination findings, and diagnosed Mr. Powell with gastroenteritis); *id.* (December 2018 visit where Mr. Powell obtained gastroenterology referral); Tr. 18 (2019 annual wellness check where Mr. Powell complained of bloating, cramping with diarrhea, and constipation, and the provider made normal physical examination findings). At step three, the ALJ considered whether Mr. Powell met Listing 5.06 for IBS. *See* Tr. 20. The ALJ's decision also reflects that he considered Mr. Powell's testimony regarding his abdominal issues. *See* Tr. 23 (noting Mr. Powell's testimony that "[h]is anxiety tended to cause his abdominal pain and problems to flare up. He needed to be close to a restroom. He had accidents 2-3 times a month and they were typically triggered by stress. He followed a close diet but still experienced constipation or diarrhea. Sometimes he had to go to the restroom 6 times a day for 1 hour at a time."). In addition, although Mr. Powell received a referral to

gastroenterology over two years prior in December 2018, the ALJ found there was no record evidence that Mr. Powell ever followed up on the referral despite his allegations regarding the severity of his abdominal issues. *See* Tr. 26. All of the foregoing plainly establishes that the ALJ considered Mr. Powell's "GI issues."

Second, Mr. Powell argues the ALJ failed to consider his "disabled veterans leave." *See* Dkt. 10 at 10. Disabled veteran leave is federally mandated under 5 U.S.C. § 6329, which provides:

> During the 12-month period beginning on the first day of employment, any employee who is a veteran with a service-connected disability rated at 30 percent or more is entitled to leave, without loss or reduction in pay, for purposes of undergoing medical treatment for such disability for which sick leave could regularly be used.

In the social security context, the Court is unaware of any applicable regulation or case law that dictates an ALJ must consider a claimant's entitlement to disabled veteran leave when making a disability determination. Nor has Mr. Powell pointed to any such authority. Under the plain language of Section 6329, eligibility for disabled veteran leave is contingent on whether a veteran has a service-connected disability rated at 30 percent or more. To the extent Mr. Powell may be arguing by extension that the ALJ erroneously failed to consider his Veteran Affairs ("VA") disability rating, the governing Social Security regulation provides that disability decisions by governmental agencies, such as the VA, are not binding on the Commissioner. 20 C.F.R. § 404.1504. Prior to an amendment to the regulation in 2017, VA disability ratings were considered "evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *see also Loza v. Apfel*, 219 F.3d 378, 394–95 (5th Cir. 2000) ("A VA rating of 100 percent service connected disability is not legally binding on the Commissioner, but is evidence that is entitled to great weight and should not have been disregarded by the ALJ."). However, the regulation was amended in 2017, such that the

Commissioner does not need to "provide any analysis in [the] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (binding all Social Security claims filed on or after March 27, 2017). Although the Commissioner is not required to "provide any analysis" regarding a VA disability rating, the Commissioner is still required to "consider all of the *supporting evidence underlying* the other governmental agency or nongovernmental entity's decision" that the Commissioner receives as evidence. *Id.* (emphasis added). Here, because Mr. Powell filed his claim after 2017, the ALJ was not obligated to give any weight to his VA disability rating, and by extension, his eligibility for disabled veteran leave. Rather, all the ALJ was required to do was consider the underlying VA records. Mr. Powell's VA medical records were part of the administrative record, and the ALJ considered the records throughout his decision. *See* Tr. 13–28. Accordingly, Mr. Powell's argument regarding disabled veteran leave, and by extension, his VA disability rating, lacks merit. *See Vadney v. Saul*, No. H-19-1818, 2020 WL 3847844, at *5 (S.D. Tex. June 19, 2020) (holding that multiple citations to the exhibits containing the VA records throughout the ALJ's decision were sufficient evidence that the ALJ "considered the VA's disability ratings and the supporting medical records").

Third, Mr. Powell argues the ALJ failed to consider his "assisted reentry into the workforce." *See* Dkt. 10 at 10. Mr. Powell cites to his hearing testimony regarding five months in 2018 where he worked for the VA, where "they [the VA] were helping [Mr. Powell] try to . . . get back into the work force." *See* Tr. 91. The ALJ, however, considered Mr. Powell's employment with the VA at least twice in his decision. *See* Tr. 13, 27. Thus, Mr. Powell has not shown error.

Fourth, Mr. Powell argues the ALJ failed to address the impact of Mr. Powell's anticipated absences due to his impairments on his ability to maintain work. *See* Dkt. 10 at 10. As to this issue,

13

Mr. Powell notes that the vocational expert testified to a tolerance for absences being one day a month and bathroom breaks being no more than nine minutes per hour. *Id.* n.2. He then points to a 2018 paystub which shows that he took one hundred eight hours of leave without pay and fifty-six hours of sick leave over a roughly six-month term of employment. *Id.* The Court finds the paystub does not establish prejudice—there is no indication from the paystub what the leave without pay was taken for, and the fifty-six hours of sick leave average to roughly nine hours per month, which is not significantly more than the eight hours to which the VE testified. Finally, as the Commissioner points out, the ALJ is not bound by VE testimony based on hypothetical assumptions that the ALJ did not ultimately adopt. *See* Dkt. 12 at 7 (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)). In sum, there is no legal basis to reverse based on Plaintiff's bare contentions that the ALJ ignored his GI issues, disabled veteran leave, his assisted reentry into the workforce, and his anticipated work absences.

## IV. <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been

served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 3rd day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE